WESTERN DISTRICT OF WISCONSIN
UNITED STATES BANKRUPTCY COURT

---

IN Re:                                  Chapter 7

Jayne M. Anderson,                      Case No. 13-16039
        Debtor.
                                        DEBTOR'S RESPONSE
                                        TO TRUSTEE'S MEMORANDUM
                                        OF LAW

---

## FACTS

The facts in this matter are not in dispute and have been accurately represented by the Trustee. Attached and marked as Exhibit A is the Contract for Deed entered by the Debtor as the vendor.

## ISSUE

When does the sale of the property at issue occur? Or, do the facts of the sale of the property create an equitable mortgage?

## DISCUSSION

"Because the statue protects the proceeds of sale for only a fixed period of time after the sale, the central question is when Debtor's 'sale' of his homestead took place for the purposes of MINN. STAT. § 510.07. If that sale" occurred upon the execution of the contract for deed, the stream of payments to which Debtor is entitled under the contract is exempt only to the extent of those payments made or payable within one year of that sale. If, on the other hand, the "sale" will take place only upon the final payment under the contract and/or the transfer of legal title, Debtor's right to receive the consideration for that sale is exempt from claims of creditors for one year after those events – conceivably up to November 15, 1999, or even thereafter". *In re Ehrich*, 110 BR 424 – Bankr. Court, Minnesota 1990

The sale the court is scrutinizing in *Ehrich* is that of the debtor's homestead to determine application of the homestead exemption. This is the case cited and relied upon by the Trustee in the case at bar. The issue in *Ehrich* is the issue in the case at bar: When did the sale of the homestead occur?

In *Ehrich*, the debtor's sold their homestead under a contract for deed and retained a life estate. The debtors attempted to exempt the proceeds of sale under the homestead exemption statue.

The Ehrich court cited a number of cases, *In re Petition of S.R.A., Inc.*, 219 Minn. 493, 507, 18 N.W.2d 442, 449-50 (1945), *aff'd*, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946); *Gilbert Builders, Inc. v. Community Bank of DePere*, 407 N.W.2d 7106, 708 (Minn.App.1987), *rev. den.* (Minn. August 19, 1987); *Friberg v. Fagen*, 404 N.W.2d 400, 403-04 (Minn.App.1987). *In re Emerson*, 58 Minn.450, 60 N.W.23 (1894). *Baer v.Huesman*, 381 N.W.2d 73 (Minn.App.1986). *Tillotson v. Millard*, 7 Minn. 513 (Gil.419) (1862). *In re Sikkink*, 60 B.R. 298 (Bankr.D.Minn.1986)., in which the debtor held an interest in a homestead less than fee simple. In all these cases the lesser interest was recognized as a homestead, specifically, life estates constitute a homestead under the homestead exemption statute.

The *Ehrich* court then goes on to analyze the contract for the sale or conveyance of the homestead. "Debtor has contracted to sell a 'bundle of rights' for a price, and has reserved an additional 'bundle of rights' which the court recognizes as an exempt homestead under the statue". *Ehrich* 429. The court has determined that the life estate, or continued tenancy is the exempt homestead.

In its analysis, the *Ehrich* Court cited a criticism by the Minnesota Supreme Court (*O'Brien v. Johnson*, 275 Minn. 305, 148 N.W. 2d 357 (1967). of double dipping in the homestead exemption. Id 427-428. At page 429 the Court discussed the debtor's assertion that the "creative" land contract was an attempt at estate planning. It simply was not a land contract for deed.

The court ultimately determines that the Ehrichs hold a legal status analogous to that of a creditor under a contract secured by a real estate mortgage, which upon the execution of the contract an <u>equitable</u> transfer took place.

It is clear that an analysis of the facts, that is, an analysis of the contact is necessary to determine when a sale occurs in a contract for deed. In a standard sale as we have in the case at bar, in which the standardized State of Minnesota form was used, the sale is at the end of the contract. This is clearly stated in *Ehrich* at page 428.

The facts in *Ehrich* are completely distinguishable from a standard land contract for deed. Ehrich attempted a double dipping scheme and the court found an "equitable mortgage". The *Ehrich* court recognized, in language cited above, that the sale takes place "upon the final payment" of the land contract and that **'debtor's rights to receive the consideration for that sale is exempt from claims of creditors for one year after those events – conceivably up to November 15, 1999 or even thereafter".**

## CONCLUSION

In the case at bar, the Trustee simply took a ruling from a factually dissimilar case and has asked the court to recognize this cite as the law and apply in the case at

bar. The law, as it applies to when a sale of a homestead occurs under a contract for deed is in the above paragraph in bold and is taken from the case relied on by the Trustee.

    The Trustee has the burden of proof of showing that a contract for deed is an equitable mortgage. *Westberg v. Wilson*, 185 Minn. 307, 309, 241 N.W. 315 316 (1932) The Trustee simply has not and cannot accomplish that fact in the case at bar.

Dated this 17th day of June, 2014.

/s/ Daniel DeMaio
Daniel F. DeMaio
Attorney for Debtors



NO DELINQUENT TAXES AND
TRANSFER ENTERED
DATE Nov. 13, 2012
AUDITOR _____
DEPUTY _____
08.04999.0000

OFFICE OF COUNTY RECORDER
STEARNS COUNTY, MINNESOTA

## Document: A1383652

Certified, Filed, and/or Recorded on

**November 13, 2012 1:05 PM**

DIANE GRUNDHOEFER
STEARNS COUNTY RECORDER



1383652

---

(Top 3 inches reserved for recording data)

M/D Miller/Davis Company - millerdavis.com

| CONTRACT FOR DEED | Minnesota Uniform Conveyancing Blanks |
| by Individual(s) | Form 30.1.1 (2011) |

DATE: November 9, 2012
           (month/day/year)

THIS CONTRACT FOR DEED (the "**Contract**") is made on the above date by **Jayne Anderson, a single person**
                                                                                        (insert name and marital status of each Seller)
_____, ("**Seller**"),

and **Richard V. Sturtz and Michael J. Sturtz,**
           (insert name of each Purchaser)
_____, ("**Purchaser**")  (Check box if ☒ joint tenancy.)

Seller and Purchaser agree to the following terms:

   1. **Property Description.** Seller hereby sells and Purchaser hereby buys real property in **Stearns**
County, Minnesota, described as follows:
SEE ATTACHED




Check here if all or part of the described real property is Registered (Torrens) ☐

together with all hereditaments and appurtenances belonging thereto (the "**Property**"). Unless otherwise specified, Seller hereby delivers possession of the Property to Purchaser on the date hereof.


*Check applicable box:*
☐ The Seller certifies that the Seller does not know of
   any wells on the described real property
☐ A well disclosure certificate accompanies this document or has
   been electronically filed. (If electronically filed, insert WDC
   number: _____.)
☒ I am familiar with the property described in this
   instrument and I certify that the status and number
   of wells on the described real property have not changed
   since the last previously filed well disclosure certificate.

Page 1

✓ Amundson + Johnson

SCR __1__ of __9__

2. **Title.** Seller warrants that title to the Property is, on the date of this Contract, subject only to the following exceptions:
    (a) Covenants, conditions, restrictions (without effective forfeiture provisions) and declarations of record, if any;
    (b) Reservation of minerals or mineral rights by the State of Minnesota, if any;
    (c) Utility and drainage easements which do not interfere with present improvements;
    (d) Applicable laws, ordinances, and regulations;
    (e) The lien of real estate taxes and installments of special assessments which are payable by Purchaser pursuant to paragraph 6 of this Contract; and
    (f) The following liens or encumbrances:

NONE

3. **Delivery of Deed and Evidence of Title.** Upon Purchaser's full performance of this Contract, Seller shall:
    (a) Execute, acknowledge, and deliver to Purchaser a <u>Standard Warranty</u> Deed, in recordable form, conveying marketable title to the Property to Purchaser, subject only to the following exceptions:
        (i)   Those exceptions referred to in paragraph 2(a), (b), (c), (d), and (e) of this Contract;
        (ii)  Liens, encumbrances, adverse claims or other matters which Purchaser has created, suffered or permitted to accrue after the date of this Contract; and
        (iii) The following liens or encumbrances:

NONE

    (b) Deliver to Purchaser the abstract of title to the Property, without further extension, to the extent required by the purchase agreement (if any) between Seller and Purchaser

4. **Purchase Price.** Purchaser shall pay to Seller at <u>any place as designated by the Seller</u> the sum of <u>Fifty Thousand and 00/100----------------------------------------</u> Dollars ($<u>50,000.00</u>), as and for the purchase price (the "**Purchase Price**") for the Property, payable as follows:

$10,000.00 down, receipt of which is acknowledged by the Seller. Further balance of $40,000.00 shall be paid as follows: $500.00 on December 9, 2012 and $500.00 on the 9th day of each and every month thereafter until November 9, 2017, when the full principal balance then remaining, together with any accrued interest thereon, shall be due and payable.

It is understood and agreed that the aforementioned monthly payments of $500.00 shall include interest at the rate of 5.00% per annum on the unpaid balance, beginning on the 9th day of November, 2012, and that said interest shall be first deducted out of each payment, and the remainder of each payment shall be applied to the reduction of the principal balance.

Buyer is not required to payoff prior to balloon payment date (November 9, 2017)

5. **Prepayment.** Unless otherwise provided in this Contract, Purchaser shall have the right to fully or partially prepay this Contract at any time without penalty. Any partial prepayment shall be applied first to payment of amounts then due under this Contract, including unpaid accrued interest, and the balance shall be applied to the principal installments to be paid in the inverse order of their maturity. Partial prepayment shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments

6  **Real Estate Taxes and Assessments.** Real estate taxes and installments of special assessments which are due and payable in the year in which this Contract is dated shall be paid as follows:
2012 Real Estate Taxes shall be prorated to the date of closing   2013 Real Estate Taxes and all years thereafter shall be paid by the purchaser.

Purchaser shall pay, before penalty accrues, all real estate taxes and installments of special assessments assessed against the Property which are due and payable in all subsequent years   Seller warrants that the real estate taxes and installments of special assessments which were due and payable in the years preceding the year in which this Contract is dated are paid in full   If the Property is subject to a recorded declaration providing for assessments to be levied against the Property by any owners' association, Purchaser shall promptly pay, when due, all assessments imposed by the owners' association or other governing body as required by the provisions of the declaration or other related documents.

7. **Property Insurance.**
   (a) Insured Risks and Amounts. Purchaser shall keep all buildings, improvements, and fixtures now or later located on or a part of the Property insured against loss by fire, lightning and such other perils as are included in a standard "all-risk" endorsement, and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy, including, without limitation, vandalism, malicious mischief, burglary, theft and, if applicable, steam boiler explosion   Such insurance shall be in an amount no less than the full replacement cost of the buildings, improvements, and fixtures, without deduction for physical depreciation. If any of the buildings, improvements, or fixtures are located in a federally designated flood prone area, and if flood insurance is available for that area, Purchaser shall procure and maintain flood insurance in amounts reasonably satisfactory to Seller.
   (b) Other Terms   The insurance policy shall contain a loss payable clause in favor of Seller which provides that Seller's right to recover under the insurance shall not be impaired by any acts or omissions of Purchaser or Seller, and that Seller shall otherwise be afforded all rights and privileges customarily provided a mortgagee under the so-called standard mortgage clause
   (c) Notice of Damage   In the event of damage to the Property by fire or other casualty, Purchaser shall promptly give notice of such damage to Seller and the insurance company

8. **Damage to the Property.**
   (a) Application of Insurance Proceeds   If the Property is damaged by fire or other casualty, the insurance proceeds paid on account of such damage shall be applied to payment of the amounts payable by Purchaser under this Contract, even if such amounts are not then due to be paid, unless Purchaser makes a permitted election described in the next paragraph   Such amounts shall be first applied to unpaid accrued interest and next to the installments to be paid as provided in this Contract in the inverse order of their maturity   Such payment shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments. The balance of insurance proceeds, if any, shall be the property of Purchaser.
   (b) Purchaser's Election to Rebuild   If Purchaser is not in default under this Contract, or after curing any such default, and if the mortgagees in any prior mortgages and sellers in any prior contracts for deed do not require otherwise, Purchaser may elect to have that portion of such insurance proceeds necessary to repair, replace, or restore the damaged Property (the "**Repairs**") deposited in escrow with a bank or title insurance company qualified to do business in the State of Minnesota, or such other party as may be mutually agreeable to Seller and Purchaser   The election may only be made by written notice to Seller within sixty (60) days after the damage occurs   Also, the election will only be permitted if the plans and specifications and contracts for the Repairs are approved by Seller, which approval Seller shall not unreasonably withhold or delay   If such a permitted election is made by Purchaser, Seller and Purchaser shall jointly deposit, when paid, such insurance proceeds into such escrow. If such insurance proceeds are insufficient for the Repairs, Purchaser shall, before the commencement of the Repairs, deposit into such escrow sufficient additional money to insure the full payment for the Repairs   Even if the insurance proceeds are unavailable or are insufficient to pay the cost of the Repairs, Purchaser shall at all times be responsible to pay the full cost of the Repairs   All escrowed funds shall be disbursed by the escrowee in accordance with generally accepted sound construction disbursement procedures   The costs incurred or to be incurred on account of such escrow shall be deposited by Purchaser into such escrow before the commencement of the Repairs. Purchaser shall complete the Repairs as soon as reasonably possible and in a good and workmanlike manner, and in any event the Repairs shall be completed

by Purchaser within one (1) year after the damage occurs. If, following the completion of and payment for the Repairs, there remains any undisbursed escrow funds, such funds shall be applied to payment of the amounts payable by Purchaser under this Contract in accordance with paragraph 8(a) above

(c) <u>Owners' Association</u>. If the Property is subject to a recorded declaration, so long as the owners' association maintains a master or blanket policy of insurance against fire, extended coverage perils and such other hazards and in such amount as are required by this Contract, then: (i) Purchaser's obligation in the Contract to maintain hazard insurance coverage on the Property is satisfied; (ii) the provisions of paragraph 8(a) of this Contract regarding application of insurance proceeds shall be superseded by the provisions of the declaration or other related documents; and (iii) in the event of a distribution of insurance proceeds in lieu of restoration or repair following an insured casualty loss to the Property, any such proceeds payable to Purchaser are hereby assigned and shall be paid to Seller for application to the sum secured by this Contract, with the excess, if any, paid to Purchaser

9. **Injury or Damage Occurring on the Property.**
(a) <u>Liability</u>. Seller shall be free from liability and claims for damages by reason of injuries occurring on or after the date of this Contract to any person or persons or property while on or about the Property. Purchaser shall defend and indemnify Seller from all liability, loss, cost, and obligations, including reasonable attorneys' fees, on account of or arising out of any such injuries. However, Purchaser shall have no liability or obligation to Seller for such injuries which are caused by the negligence or intentional wrongful acts or omissions of Seller.
(b) <u>Liability Insurance</u>. Purchaser shall, at Purchaser's own expense, procure and maintain liability insurance against claims for bodily injury, death and property damage occurring on or about the Property in amounts reasonably satisfactory to Seller and naming Seller as an additional insured

10. **Insurance Generally.** The insurance which Purchaser is required to procure and maintain pursuant to paragraphs 7 and 9 of this Contract shall be issued by an insurance company or companies licensed to do business in the State of Minnesota and acceptable to Seller. The insurance shall be maintained by Purchaser at all times while any amount remains unpaid under this Contract. The insurance policies shall provide for not less than ten (10) days written notice to Seller before cancellation, non-renewal, termination or change in coverage, and Purchaser shall deliver to Seller a duplicate original or certificate of such insurance policy or policies

11. **Condemnation.** If all or any part of the Property is taken in condemnation proceedings instituted under power of eminent domain or is conveyed in lieu thereof under threat of condemnation, the money paid pursuant to such condemnation or conveyance in lieu thereof shall be applied to payment of the amounts payable by Purchaser under this Contract, even if such amounts are not then due to be paid. Such amounts shall be applied in the same manner as a prepayment as provided in paragraph 5 of this Contract. Such payments shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments. The balance, if any, shall be the property of Purchaser.

12. **Waste, Repair, and Liens.** Purchaser shall not remove or demolish any buildings, improvements, or fixtures now or later located on or a part of the Property, nor shall Purchaser commit or allow waste of the Property. Purchaser shall maintain the Property in good condition and repair. Purchaser shall not create or permit to accrue liens or adverse claims against the Property which constitute a lien or claim against Seller's interest in the Property. Purchaser shall pay to Seller all amounts, costs and expenses, including reasonable attorneys' fees, incurred by Seller to remove any such liens or adverse claims

13. **Compliance with Laws.** Except for matters which Seller has created, suffered, or permitted to exist prior to the date of this Contract, Purchaser shall comply or cause compliance with all laws and regulations of any governmental authority which affect the Property or the manner of using or operating the same, and with all restrictive covenants, if any, affecting title to the Property or the use thereof

14. **Recording of Contract; Deed Tax.** Purchaser shall, at Purchaser's expense, record this Contract in the Office of the County Recorder or Registrar of Titles in the county in which the Property is located within four (4) months after the date hereof. Purchaser shall pay any penalty imposed under Minn. Stat. 507.235 for failure to timely record the Contract. Seller shall, upon Purchaser's full performance of this Contract, pay the deed tax due upon the recording of the deed to be delivered by Seller

15  **Notice of Assignment.** If either Seller or Purchaser assigns its interest in the Property, the assigning party shall promptly furnish a copy of such assignment to the non-assigning party.

16. **Protection of Interests.** If Purchaser fails to pay any sum of money required under the terms of this Contract or fails to perform any of the Purchaser's obligations as set forth in this Contract, Seller may, at Seller's option, pay the same or cause the same to be performed, or both, and the amounts so paid by Seller and the cost of such performance shall be payable at once, with interest at the rate stated in paragraph 4 of this Contract, as an additional amount due Seller under this Contract. If there now exists, or if Seller hereafter creates, suffers or permits to accrue, any mortgage, contract for deed, lien or encumbrance against the Property which is not herein expressly assumed by Purchaser, and provided Purchaser is not in default under this Contract, Seller shall timely pay all amounts due thereon, and if Seller fails to do so, Purchaser may, at Purchaser's option, pay any such delinquent amounts or take any actions reasonably necessary to cure defaults there under and deduct the amounts so paid together with interest at the rate provided in this Contract from the payments next coming due under this Contract.

17  **Defaults and Remedies.** The time of performance by Purchaser of the terms of this Contract is an essential part of this Contract. If Purchaser fails to timely perform any term of this Contract, Seller may, at Seller's option, elect to declare this Contract cancelled and terminated by notice to Purchaser in accordance with applicable law or elect any other remedy available at law or in equity. If Seller elects to terminate this Contract, all right, title, and interest acquired under this Contract by Purchaser shall then cease and terminate, and all improvements made upon the Property and all payments made by Purchaser pursuant to this Contract (including escrow payments, if any) shall belong to Seller as liquidated damages for breach of this Contract. Neither the extension of the time for payment of any sum of money to be paid hereunder nor any waiver by Seller of Seller's rights to declare this Contract forfeited by reason of any breach shall in any manner affect Seller's right to cancel this Contract because of defaults subsequently occurring, and no extension of time shall be valid unless agreed to in writing. After service of notice of default and failure to cure such default within the period allowed by law, Purchaser shall, upon demand, surrender possession of the Property to Seller, but Purchaser shall be entitled to possession of the Property until the expiration of such period. Failure by Seller to exercise one or more remedies available under this paragraph 17 shall not constitute a waiver of the right to exercise such remedy or remedies thereafter.

18  **Binding Effect.** The terms of this Contract shall run with the land and bind the parties hereto and the successors in interest.

19. **Headings.** Headings of the paragraphs of this Contract are for convenience only and do not define, limit, or construe the contents of such paragraphs.

20. **Additional Terms:** *Check here if* ☐ *an addendum to this Contract containing additional terms and conditions is attached hereto.*


Seller                                                                          Purchaser

_____Jayne Anderson_____                                              _____Richard V. Sturtz_____
(signature) Jayne Anderson                                                      (signature) Richard V. Sturtz

                                                                                _____Michael J. Sturtz_____
_____                                               
(signature)                                                                     (signature) Michael J. Sturtz

Page 6                          Minnesota Uniform Conveyancing Blanks  Form 30.1.1

State of Minnesota, County of Stearns

This instrument was acknowledged before me on November 9, 2012, by Jayne Anderson, a single person, as Seller
*(month/day/year)*
*(insert name and marital status of each Seller)*

(Seal, if any)

SHERI LYNN BLONIGEN
NOTARY PUBLIC-MINNESOTA
My Comm. Exp. Jan. 31, 2015

(signature of notarial officer)

Title (and Rank): _____

My commission expires: _____
*(month/day/year)*

State of Minnesota, County of Stearns

This instrument was acknowledged before me on November 9, 2012, by Richard V. Sturtz, a married person & Michael J. Sturtz, a single person, as Puchasers.
*(month/day/year)*
*(insert name of each Purchaser)*

(Seal, if any)

SHERI LYNN BLONIGEN
NOTARY PUBLIC-MINNESOTA
My Comm. Exp. Jan. 31, 2015

(signature of notarial officer)

Title (and Rank): _____

My commission expires: _____
*(month/day/year)*

THIS INSTRUMENT WAS DRAFTED BY:
*(insert name and address)*

Ross M. Amundson (RMA/sb)
Amundson & Johnson, P A
217 West James Street
PO Box 241
Paynesville, mn 56362-
320-243-3878
Atty Reg No. 186466

TAX STATEMENTS FOR THE REAL PROPERTY DESCRIBED IN THIS INSTRUMENT SHOULD BE SENT TO:
*(insert legal name and residential or business address of Grantee)*

Michael Sturtz
25016 Dane Road
Paynesville, MN 56362

Note: Failure to record this contract for deed may give other parties priority over Purchaser's interest in the property.

SCR 6 of 9

## LEGAL DESCRIPTION
Anderson - Sturtz

Lot Three (3) and the West 50 feet of Lot Four (4), in Block Two (2), as measured along the North and South lines of said Lot Four (4) of Frank's Subdivision, Stearns County, Minnesota.

SCR 7 of 9

Anderson/Sturtz

Compound Period .........: Monthly

Nominal Annual Rate .....: 5.000 %
Effective Annual Rate ....: 5.116 %
Periodic Rate ...................: 0.4167 %
Daily Rate ........................: 0.01370 %

CASH FLOW DATA

| Event | Start Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|
| 1 Loan | 11/09/2012 | 50,000.00 | 1 | | |
| 2 Payment | 11/09/2012 | 10,000.00 | 1 | | |
| 3 Payment | 12/09/2012 | 500.00 | 59 | Monthly | 10/09/2017 |
| 4 Payment | 11/09/2017 | 17,831.31 | 1 | | |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 11/09/2012 | | | | 50,000.00 |
| 1 | 11/09/2012 | 10,000.00 | 0.00 | 10,000.00 | 40,000.00 |
| 2 | 12/09/2012 | 500.00 | 166.67 | 333.33 | 39,666.67 |
| 2012 Totals | | 10,500.00 | 166.67 | 10,333.33 | |
| 3 | 01/09/2013 | 500.00 | 165.28 | 334.72 | 39,331.95 |
| 4 | 02/09/2013 | 500.00 | 163.88 | 336.12 | 38,995.83 |
| 5 | 03/09/2013 | 500.00 | 162.48 | 337.52 | 38,658.31 |
| 6 | 04/09/2013 | 500.00 | 161.08 | 338.92 | 38,319.39 |
| 7 | 05/09/2013 | 500.00 | 159.66 | 340.34 | 37,979.05 |
| 8 | 06/09/2013 | 500.00 | 158.25 | 341.75 | 37,637.30 |
| 9 | 07/09/2013 | 500.00 | 156.82 | 343.18 | 37,294.12 |
| 10 | 08/09/2013 | 500.00 | 155.39 | 344.61 | 36,949.51 |
| 11 | 09/09/2013 | 500.00 | 153.96 | 346.04 | 36,603.47 |
| 12 | 10/09/2013 | 500.00 | 152.51 | 347.49 | 36,255.98 |
| 13 | 11/09/2013 | 500.00 | 151.07 | 348.93 | 35,907.05 |
| 14 | 12/09/2013 | 500.00 | 149.61 | 350.39 | 35,556.66 |
| 2013 Totals | | 6,000.00 | 1,889.99 | 4,110.01 | |
| 15 | 01/09/2014 | 500.00 | 148.15 | 351.85 | 35,204.81 |
| 16 | 02/09/2014 | 500.00 | 146.69 | 353.31 | 34,851.50 |
| 17 | 03/09/2014 | 500.00 | 145.21 | 354.79 | 34,496.71 |
| 18 | 04/09/2014 | 500.00 | 143.74 | 356.26 | 34,140.45 |
| 19 | 05/09/2014 | 500.00 | 142.25 | 357.75 | 33,782.70 |
| 20 | 06/09/2014 | 500.00 | 140.76 | 359.24 | 33,423.46 |
| 21 | 07/09/2014 | 500.00 | 139.26 | 360.74 | 33,062.72 |
| 22 | 08/09/2014 | 500.00 | 137.76 | 362.24 | 32,700.48 |
| 23 | 09/09/2014 | 500.00 | 136.25 | 363.75 | 32,336.73 |
| 24 | 10/09/2014 | 500.00 | 134.74 | 365.26 | 31,971.47 |
| 25 | 11/09/2014 | 500.00 | 133.21 | 366.79 | 31,604.68 |
| 26 | 12/09/2014 | 500.00 | 131.69 | 368.31 | 31,236.37 |

Anderson/Sturtz

|    | Date       | Payment   | Interest | Principal | Balance   |
|----|------------|-----------|----------|-----------|-----------|
|    | 2014 Totals | 6,000.00 | 1,679.71 | 4,320.29  |           |
| 27 | 01/09/2015 | 500.00    | 130.15   | 369.85    | 30,866.52 |
| 28 | 02/09/2015 | 500.00    | 128.61   | 371.39    | 30,495.13 |
| 29 | 03/09/2015 | 500.00    | 127.06   | 372.94    | 30,122.19 |
| 30 | 04/09/2015 | 500.00    | 125.51   | 374.49    | 29,747.70 |
| 31 | 05/09/2015 | 500.00    | 123.95   | 376.05    | 29,371.65 |
| 32 | 06/09/2015 | 500.00    | 122.38   | 377.62    | 28,994.03 |
| 33 | 07/09/2015 | 500.00    | 120.81   | 379.19    | 28,614.84 |
| 34 | 08/09/2015 | 500.00    | 119.23   | 380.77    | 28,234.07 |
| 35 | 09/09/2015 | 500.00    | 117.64   | 382.36    | 27,851.71 |
| 36 | 10/09/2015 | 500.00    | 116.05   | 383.95    | 27,467.76 |
| 37 | 11/09/2015 | 500.00    | 114.45   | 385.55    | 27,082.21 |
| 38 | 12/09/2015 | 500.00    | 112.84   | 387.16    | 26,695.05 |
|    | 2015 Totals | 6,000.00 | 1,458.68 | 4,541.32  |           |
| 39 | 01/09/2016 | 500.00    | 111.23   | 388.77    | 26,306.28 |
| 40 | 02/09/2016 | 500.00    | 109.61   | 390.39    | 25,915.89 |
| 41 | 03/09/2016 | 500.00    | 107.98   | 392.02    | 25,523.87 |
| 42 | 04/09/2016 | 500.00    | 106.35   | 393.65    | 25,130.22 |
| 43 | 05/09/2016 | 500.00    | 104.71   | 395.29    | 24,734.93 |
| 44 | 06/09/2016 | 500.00    | 103.06   | 396.94    | 24,337.99 |
| 45 | 07/09/2016 | 500.00    | 101.41   | 398.59    | 23,939.40 |
| 46 | 08/09/2016 | 500.00    | 99.75    | 400.25    | 23,539.15 |
| 47 | 09/09/2016 | 500.00    | 98.08    | 401.92    | 23,137.23 |
| 48 | 10/09/2016 | 500.00    | 96.41    | 403.59    | 22,733.64 |
| 49 | 11/09/2016 | 500.00    | 94.72    | 405.28    | 22,328.36 |
| 50 | 12/09/2016 | 500.00    | 93.03    | 406.97    | 21,921.39 |
|    | 2016 Totals | 6,000.00 | 1,226.34 | 4,773.66  |           |
| 51 | 01/09/2017 | 500.00    | 91.34    | 408.66    | 21,512.73 |
| 52 | 02/09/2017 | 500.00    | 89.64    | 410.36    | 21,102.37 |
| 53 | 03/09/2017 | 500.00    | 87.93    | 412.07    | 20,690.30 |
| 54 | 04/09/2017 | 500.00    | 86.21    | 413.79    | 20,276.51 |
| 55 | 05/09/2017 | 500.00    | 84.49    | 415.51    | 19,861.00 |
| 56 | 06/09/2017 | 500.00    | 82.75    | 417.25    | 19,443.75 |
| 57 | 07/09/2017 | 500.00    | 81.02    | 418.98    | 19,024.77 |
| 58 | 08/09/2017 | 500.00    | 79.27    | 420.73    | 18,604.04 |
| 59 | 09/09/2017 | 500.00    | 77.52    | 422.48    | 18,181.56 |
| 60 | 10/09/2017 | 500.00    | 75.76    | 424.24    | 17,757.32 |
| 61 | 11/09/2017 | 17,831.31 | 73.99    | 17,757.32 | 0.00      |
|    | 2017 Totals | 22,831.31 | 909.92  | 21,921.39 |           |
|    | Grand Totals | 57,331.31 | 7,331.31 | 50,000.00 |           |

SCR 9 of 9