# UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF WISCONSIN

In re:                                                    Case Number: 13-16039-7

JAYNE MARIE ANDERSON,

        Debtor.

## DECISION

The Trustee has objected to the Debtor's claim of a homestead exemption under Minn. Stat. §§ 510.01-.02. For the reasons that follow, the Trustee's objection is SUSTAINED.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" over all cases under title 11 ("Bankruptcy Code" or "Code") and "original but not exclusive jurisdiction" over all civil proceedings that arise under the Bankruptcy Code or that arise in or are related to cases under the Code. 28 U.S.C. §§ 1334(a)-(b). The district courts may, however, refer such cases to the bankruptcy judges within their district. In the Western District of Wisconsin, the district court has made such a reference. *See* Western District of Wisconsin Administrative Order 161 (July 12, 1984). Accordingly, this Court "may hear and determine all cases under title 11 and all core proceedings under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1).

Bankruptcy courts determine whether a proceeding is core or non-core. 28 U.S.C. § 157(b)(3). Proceedings concerning exemptions from property of the estate are core proceedings that are integral to the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(B); *cf. Stern v. Marshall*, 131 S. Ct. 2594, 2617 (2011). As such, this Court has both the jurisdiction and the authority to enter a final judgment in this matter.

## FACTS AND PROCEDURAL HISTORY

The following facts are undisputed. The Debtor, Jayne Marie Anderson, lived at 25016 Dane Road in Paynesville, Minnesota ("Paynesville Property"), from 2006 until November 9, 2012, when she sold the property on land contract. The sales price was $50,000. The Debtor received $10,000 upon execution and is entitled to receive $500 per month until November 9, 2017. The contract called for the buyer to pay all real estate taxes and insurance after the execution of the agreement.

After selling the Paynesville Property, the Debtor relocated to Wisconsin. On December 23, 2013, she filed a voluntary Chapter 7 proceeding in the Western District of Wisconsin and claimed a homestead exemption worth $57,331.31 for the proceeds from the sale of the Paynesville Property. The Trustee objected to the Debtor's claim of exemptions, and the parties have each submitted briefs. The matter is now ripe for decision.

2

## ARGUMENTS

The Trustee argues that pursuant to the applicable Minnesota exemption statute, the Debtor may only exempt proceeds from the sale of a homestead that are received within one year of the date of the execution of the land contract. As such, he asserts that the Debtor may not exempt any proceeds that she received on account of the land contract after November 9, 2013.

The Debtor argues that in the context of a land contract, there is not a "sale" of property for purposes of the exemption statute until the last payment under the contract is made. Accordingly, she contends that she is entitled to exempt all of the proceeds from the sale, including the monthly payments she continues to receive.

## DISCUSSION

The filing of a bankruptcy petition creates an estate comprised of all the debtor's interests in property, wherever located and by whomever held. 11 U.S.C. § 541. Entities in possession, custody, or control of property of the estate are required to turn over such property to the trustee and account for such property or such property's value. 11 U.S.C. § 542(a). Property that qualifies under section 522, however, is exempted from the bankruptcy estate and is not liable for most pre-petition debts. 11 U.S.C. § 522(c). Pursuant to 11 U.S.C. § 522(b)(3)(A), debtors are permitted to exempt from the bankruptcy estate:

[A]ny property that is exempt under Federal law . . . or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

11 U.S.C. § 522(b)(3)(A).

In the present case, because she moved from Minnesota to Wisconsin roughly a year before the petition date, the Debtor's domicile was not located in a single state for the 730-day period immediately preceding the petition date. The state in which the Debtor's domicile was located for 180 days immediately preceding the 730-day pre-bankruptcy period was Minnesota. Accordingly, the Minnesota homestead exemptions are available to the Debtor under the Code.[1]

Section 510.01, Minn. Stat., defines the Minnesota homestead exemption:

The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants and as is provided in section 550.175.

---

[1] Venue in the Western District of Wisconsin is proper because the Debtor's domicile was located in Wisconsin for the 180 days immediately preceding the commencement of the case as required by 28 U.S.C. § 1408(1).

Section 510.02(1), Minn. Stat., provides:

> The homestead may include any quantity of land not exceeding 160
> acres. The exemption per homestead, whether the exemption is claimed
> by one or more debtors, may not exceed $390,000 or, if the homestead is
> used primarily for agricultural purposes, $975,000, exclusive of the
> limitations set forth in section 510.05.

Furthermore,

> Any interest in the land, whether legal or equitable, shall constitute
> ownership, within the meaning of this chapter, and the dwelling house so
> owned and occupied shall be exempt, though situated on the land of
> another.

Minn. Stat. § 510.04. Finally,

> The owner may sell and convey the homestead without subjecting
> it, or the proceeds of such sale for the period of one year after sale,
> to any judgment or debt from which it was exempt in the owner's
> hands . . . .

Minn. Stat. Ann. § 510.07.

In Minnesota, a land contract, or a "contract for deed" as it is also

known, is essentially "a financing arrangement which allows a buyer—the

vendee—to purchase property by borrowing the money for the purchase from

the seller—the vendor." *Shields v. Goldestky (In re Butler)*, 552 N.W.2d 226, 229

(Minn. 1996). The buyer obtains equitable title, and the seller retains bare legal

title as security for the purchase price. *See In re Petition of S. R. A., Inc.*, 219

Minn. 493, 505, 18 N.W.2d 442, 449 (1945), *aff'd sub nom. S. R. A., Inc. v.

Minnesota*, 327 U.S. 558, 66 S. Ct. 749, 90 L. Ed. 851 (1946). The seller's

security takes the form of a vendor's lien—an implied, equitable lien on the

property for the amount of the unpaid purchase price. *In re Butler*, 552 N.W.2d

at 229. In simple terms, the lien is granted in order to prevent the purchaser from obtaining the seller's property without paying for it. *Id.* (citing *Grace Dev. Co. v. Houston,* 306 Minn. 334, 335-36, 237 N.W.2d 73, 75 (1975). To that end, it is also intended to protect the seller's interest from being appropriated by the buyer's creditors. *Id.* at 230 (citing *Butler v. Wilkinson,* 740 P.2d 1244, 1256 (Utah 1987)). In the event of default, the seller has recourse to recover the property from the buyer by a number of different means. *Id.*

Thus, the seller's interest in property transferred under a land contract permits him or her to enforce the buyer's compliance with the agreement, and this interest is encompassed by the homestead exemption pursuant to Minn. Stat. § 510.04. *Id.* By the terms of the statute, the statutory exemption for the seller's legal title in the property persists as long as the seller's legal interest continues to exist—which, typically, is until the buyer has paid the full purchase price and receives unified title and a complete ownership interest in the property. *See id.* But the fruits to the seller of the buyer's performance under the contract are legally distinct from the seller's enforcement rights, and are treated as such in the exemption statute. Indeed, while the seller's legal title remains exempt, the extent to which the *proceeds* from the sale of a homestead can be exempted are specifically limited to that which is received within one year after the sale. Minn. Stat. § 510.07.

If, however, the seller somehow receives proceeds from the transaction before a "sale" occurs for purposes of the statute, then these proceeds would

6

also be exempt. The core of the parties' dispute, therefore, is simply whether a "sale" of the Paynesville Property occurred the day the land contract was executed, or whether a "sale" awaits the unification of the buyer's title when the full purchase price has been paid.

Unfortunately, there is surprisingly little precedent in Minnesota on this question. Both parties cite *In re Ehrich*—the only case this Court has uncovered that addresses the issue at hand—but each claims it supports their position and, emphatically, not the other's. *Ehrich* interprets the meaning of the term "sale" in the context of the Minnesota homestead exemption, and, fortuitously, does so in a similar procedural posture to the controversy at bar in this Court. *In re Ehrich*, 110 B.R. 424, 429 (Bankr. D. Minn. 1990). The facts in *Ehrich* are not identical to those in the present case, but they are not so different as to distinguish that case from this one.

In *Ehrich*, the debtor, a retired farmer, sold homestead property by land contract but retained a life estate. 110 B.R. at 425. The contract entitled the debtor and his wife to a down payment, a stream of monthly payments, and a balloon payment of the unpaid balance at the end of the term of the contract. *Id.* The contract also provided that the debtor and his wife would retain a life estate even after the full purchase price had been paid. *Id.* After executing the land contract, the debtor filed bankruptcy and asserted a homestead exemption to which the trustee objected. *Id.* at 425-26.

7

The *Ehrich* court readily concluded that under the circumstances, the debtor's life estate, and thus his right to possession of the property, was protected by the Minnesota homestead exemption. *Id.* at 426-27. It also concluded that the debtor was entitled to exempt payments received on account of the contract, but only for up to one year after the sale date. *Id.* at 427. Faced with the same legal question that confronts this Court, the *Ehrich* court found that, for two reasons, a "sale" occurs on the date of the execution of the contract. *Id.* at 428.

First, the court ruled that Minn. Stat. § 510.07 implies two distinct events in the course of a transfer by land contract: the "sale" and the "conveyance." *Id.* The "conveyance," the court noted, refers to the transfer of the seller's legal title to the buyer that occurs after the seller has received the full purchase price. *Id.* The court observed, however, that the language of the statute implies that a "sale" does not occur when title is transferred, but, instead, at a different point in time. *See id.* The inference to be drawn, the court suggested, is that the "sale" cannot occur after full payment has been made because that is when the "conveyance" occurs. *See id.* Therefore, the "sale" must occur sometime prior to "conveyance," and the only logical juncture at which it could occur is at the execution of the contract. *See id.*

Second, the court determined that the date of execution was the sale date by virtue of the parties' contractual relationship. *Id.* There, as here, the contract called for the buyer to pay all real estate taxes following the execution

8

of the contract which, the court found, evidenced the debtor's intent to transfer valuable property rights on the execution date. *Id.* at 429. To the *Ehrich* court, this was sufficient to connote a "sale" under the exemption statute. *Id.* Based on this analysis, the court concluded that the debtor was only entitled to exempt proceeds he had received within one year of the date on which the land contract was executed.

The reasoning in *Ehrich* is instructive and is bolstered by reference to the plain meaning of the statutory language. The word "sale" is defined as "the transfer of property or title for a price," and "the agreement by which such a transfer takes place." *Black's Law Dictionary* 1364 (8th ed. 2004). By this definition, a "sale" is precisely what occurred when the parties executed the land contract on November 9, 2012: the Debtor transferred equitable title to the Paynesville Property to the buyers and received a $10,000 down payment, as well as the promise of future monthly payments and the payment of real estate taxes and insurance. Any other interpretation of the word "sale" would require a linguistic and interpretive contortion and produce absurd results.

Because the sale occurred on November 9, 2012, the Minnesota exemption statute permits the Debtor to exempt any proceeds she received between November 9, 2012, and November 9, 2013. Proceeds received after November 9, 2013, cannot be exempted under Minn. Stat. § 510.07 and are property of the bankruptcy estate.

## CONCLUSION

For the foregoing reasons, the Trustee's objection is SUSTAINED.

This decision shall constitute findings of fact and conclusions of law

pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil

Procedure.

A separate order consistent with this decision will be entered.

Dated: August 5, 2014.

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge

10